Good morning, Your Honor. My name is Kendall Wong, appearing on behalf of Petitioner Mr. Napoleon Agaton. Please proceed, Counsel. Yes, Your Honor. Our basic argument is this, that the Immigration Nationality Act, Section 3.187-II, has been violated. That is, the Board of Immigration Appeals has violated its own regulations. In that, it states that the HCFR streamlining only if the decision of the immigration judge is, number one, correct, number two, that there are, if there are any errors, it is harmless and immaterial. You know, unless you've got a whole lot of time, you don't want to spend too much on streamlining. Oh. Go ahead. Go ahead. It's your main point. That was one of my main points, Your Honor. Go ahead. I'm sorry. Go ahead. There is, that there was no evidence of a marriage license. We'd like to get to that point real quick, because that's the basis of our argument. There was no marriage license. And without a marriage license, you're violating the Philippine law, where the marriage is supposedly consummated. We feel that the lack of You say there was no marriage license? There was no evidence in the record, Your Honor. The record is completely bereft of any marriage license. No, the record says that he applied for one. He thought he didn't get one, so he thought his marriage wasn't valid. Isn't that what this record shows? No, no, no. Your Honor, the marriage, well, if memory serves me correctly, there was a marriage contract. Yes. In the marriage contract, there was testimony that there was a reference to a marriage license. Exactly. However, when they went back to the U.S. Embassy and asked the investigator to get the marriage contract and the marriage license, the investigator could only produce the marriage contract, not the marriage license. But, counsel, wasn't the immigration judge entitled to rely on the reference to a marriage license in the marriage contract, which is a filed official document? Well, I have problems with that, Your Honor. I mean, you're having one document referred to another document that was never brought before the court, and that an official agency of the United States government, namely the U.S. Embassy, couldn't produce it. I don't know. Is that hearsay? I'm not sure on the rules of the document. An official government document is not hearsay. That's the problem you have. Okay, fine. But the thing was, well, we're just simply saying, Your Honor, there's no evidence of a marriage license. Now. What your argument is, there is evidence of a marriage license because it was referred to. Your argument is there is no actual marriage license in the record. Correct. Okay. If I may also proceed, Your Honor, if you take that also, the first part of the immigration judge's decision was to deny the motion to terminate because she found that there was a valid marriage, and that was the finding of removability. We're saying that because there's no marriage license, that in and of itself, we feel that this streamlining was valid because there was no marriage license. It is harmful. It is immaterial. And once more, there is no issue. I mean, there is no precedent controlling this issue when you have a marriage contract with no marriage license. We feel that the Respondent should, the Petitioner should reveal just on that. Didn't the Petitioner also say there was no marriage contract? I don't think we're, I don't think the Petitioner is making that argument. The Petitioner, did the Petitioner, the Petitioner never deny having a marriage contract? Petitioner states that he signed a blank contract, a blank document. And that was, I'm going to get to the next point, Your Honor, and I think this is important. The authenticated copy of a annulment was submitted to the Board of Immigration Appeals. And just, they just dismissed it out of course, Your Honor. They said, well, the record shows that we're not going to grant a motion to rule based upon that annulment. But if you look to the contents of the annulment, Your Honor, the Philippine Court states very clearly in Article, it says in the Civil Code, Section 53, no marriage shall be solemnized unless there is a marriage license. That's number one, Your Honor. Number two, a marriage shall be solemnized publicly in the office of the judge in open court or in the mayor or in a church, chapel, or temple. The facts of this case show that the marriage took place in a house, in a house. Why would he seek an annulment if he never was married? Why did he seek an annulment? If he says he was never married, then why did he seek an annulment? It's a good question. I'm not sure why. Also, there is a requirement, Your Honor, according to Article 63 of the Civil Code regarding marriages that the local civil register shall post during 10 days consecutively at the main door of the building where his office notice, the location which shall not be changed once it has been placed. That wasn't done, Your Honor. There's no evidence that there was this 10-day notice that was posted on the local civil register. Are you saying, Your Honor, that the annulment made the marriage never existed, so it was always a match? Or is that your position? I'm sorry, Your Honor. Well, if the annulment is something we can take note of, he never was married. Isn't that the effect of it? That's correct, Your Honor. So that's the point you want to make. Yes, according to the Hendricks case, too, Your Honor. In this circuit, the Hendricks case said unless unusual circumstances dictate in the interest of justice, retroactive effect should be given to an annulment. We feel that the circumstances are unusual, that you don't have a marriage license. The Philippine law requires it. And even in this annulment, if the BIA looked at the decree, the annulment... Are you saying that Hendricks says retroactive effect should or should not? Should be given. I think it says unless unusual circumstances dictate that in the interest of justice, So Hendricks does not say that retroactive effect should be given to an annulment. He says the opposite. It is the marital status at the time of entry that should serve as a basis for the alien's performance over other court assistants. Right, so Hendricks says that retroactivity of an annulment is the exception. Would you agree with that? I'm sorry, what did I say? Does Hendricks say that retroactivity of an annulment is the exception rather than the rule? That's correct. Oh. And what are the unusual circumstances? Well, the unusual circumstances, Your Honor, is number one. There is that so many provisions of the Philippine law regarding marriage has been violated, Your Honor. And I believe that this court should give full faith and credit to all of the statements that are made in the annulment. And the annulment refers to the fact that the marriage took place in a house, that there was no marriage license, in fact, that the witness that signed the marriage contract, Your Honor, submitted an affidavit to this court, and that affidavit said, I was not there. I was not there. I didn't even know him. So what I'm trying to say, Your Honor, is that there are unusual circumstances here, and we feel that What do we do to his two children? I'm sorry? If we do what you said. Doesn't he have two children? Yes, he does, sir. What do we do to them when you say, your parents are not and were never married? I don't quite understand the question, but I Do we make them bastards? Well, Your Honor, being illegitimate is not a bad thing. I mean, there's a lot of illegitimate children in the world, Your Honor. I'm not trying to say it's a bad thing. I'm saying, from the child's point of view, do we rob the child who had a legitimate father of a legitimate father? Do we do what you said? I suppose, Your Honor, that would have the effect of the children. I'm not suggesting it's a bad thing. Oh, I'm sorry. The children didn't have anything to do with it. They weren't there. Thank you. They came into the world. I apologize. But I'm saying that the child has a feeling about having a father, I would think. Don't you think so? Absolutely, Your Honor. And when we say to him, you don't have a father, you just thought you did. And that's why I said, what are we doing to the children? We're taking the child's legal father away from the child, aren't we? And in this country, you know marriages are presumptively valid. Did you know that? May I answer? No, I did not know that. Yeah. May I make one last point? With regard to the waiver issue, the new case that just came out of this honorable court was Nakamoto v. Ashcroft. And I was just given it by counsel this morning. I think this sort of helps my case in that when we talk about a 241-818 waiver, the fraud waiver, Nakamoto said that you still have the court jurisdiction is limited only when there is pure discretion involved as far as the judgment of the Attorney General is concerned. Not when there are legal standards that need to be made. We submit that the Nakamoto case, Your Honor, actually helps us because there is a legal standard involved in the case, and that is you need a marriage license in this case. And there is one. There's no proof of that. And again, we look to that, Your Honor, I respectfully submit that we look to that authenticated copy of the annulment because the annulment talks about all kinds of facts that are very disturbing to what really happened and what was said even in the courtroom of the immigration judge. And when was the annulment decision presented? It was after the deportation hearing, Your Honor. It was submitted on appeal to the BIA by another attorney. And did the BIA consider it or not? It was submitted to them, Your Honor, and all they said was we're dismissing the motion to reopen based upon the record. So it had to be a motion to reopen to get it in. Yes. That's correct, Your Honor. I'm just saying, you know, God knows we need transparency in this condominium. These one-line decisions by the BIA, wow, it just stops all kinds of inquiry. And to me, it just stops getting at the truth, making it easier for everybody. But I think that as it was said in, I guess, one of the, in another case, Your Honor, that we need to put the question to the BIA to ease the burden on this court, number one, and to be sure that their decisions are correct decisions, that they're reasoned decisions. I think that's important. All right. Thank you, counsel. We'll give you one minute for rebuttal. Thank you, Your Honor. Thank you. If it may please the Court, Anthony Payne on behalf of the United States Attorney General. If I may start first with the jurisdictional question in this case, namely the waiver. It's the government's position that this court lacks jurisdiction to consider the denial of the 237-A1H waiver. That is because Section 8 U.S.C. 1252-A2B provides that the court lacks jurisdiction over any other decision or action of the Attorney General, the authority for which is specified under this title to be in the discretion of the Attorney General. Pursuant to this court's decision in Spencer Enterprise, which is cited in our brief, the 1227-A1H waiver is specified because it includes the language in the discretion of the Attorney General. It's also consistent with the Nakamoto decision, which counsel referenced, because it's entirely in the discretion of the Attorney General. There are no legal standards by which this court can review the discretionary actions of the Attorney General to deny this waiver. So the government submits that this court lacks jurisdiction over the denial of the waiver. Turning to the finding of removability, substantial evidence supports the finding of removal. In particular, the marriage contract is substantial evidence that he was married. It provides that there was an April 7, 1980 ceremony and indicates that there was the consent of parents. And it also lists, as the court has identified, a marriage license number. On top of that, there was testimony during the naturalization proceedings in which Mr. Agaton said, admitted that he was married on April 7, 1980, but did not claim the marriage on his visa application. That is Administrative Record 347. The visa application also presents substantial evidence of a willful misrepresentation. In addition to indicating that there was no marriage, the application indicates that there was no children. The I.J. reasonably concluded that if the petitioner believed that there was no marriage, there would be no reason for him not to indicate his children because, regardless of whether or not they were ill-adjointed, he could have petitioned for those children at that point. The I.J. reasonably concluded the reason he did not include his children is because he did not want to indicate his marriage at the same time. Because that would tend to make the I.N.S. question whether or not he had these children as a result of a lawful marriage, as occurred in the naturalization proceedings. The annulment, as the Court identified, carries no weight in these proceedings pursuant to the Hendricks v. I.N.S. decision. In essence, the annulment was only obtained once removal proceedings were commenced in this case. So that tends to discredit the annulment itself. In other words, the petitioner only sought an annulment so that he could present the argument that he is now presenting, that he had an invalid marriage. The government may conclude the Court lacks jurisdiction over the waiver and substantial evidence supports the immigration judge's decision in this case. And on an aside, Falcon, Caricci, and Romero-Torres indicates that the Board was within its discretion to streamline this case. Thank you. Thank you, Counsel. Rebuttal? We'll give you one minute for rebuttal. Yes, Your Honor. Counsel made reference to the application for immigrant visa which was sent to the U.S. Embassy where he states no wife, no children. He put no wife because he really believed he wasn't married. He signed a blank marriage contract. What was the date of the annulment? December 18, 1989. And was that when the immigration proceeding was going on? It was actually two months after the removal proceeding terminated, Your Honor. However, the request for the annulment was made during the removal proceedings, but they weren't able to get it in time, and the judge didn't allow the continuance of that case. And finally, we submit that this Court does have jurisdiction over this case. Thank you. Thank you. The case just argued is submitted for decision. The final case on calendar, Funamoto v. Ashcroft, is submitted on the briefs. That completes the calendar for the day and for the week. This session of court is adjourned. Thank you. I think I'm getting my water. You know, I might be able to open the door because I just got two minutes. Okay. Thank you. Thank you. Thank you. I'll see you guys in San Francisco when you're there. Yeah, that's fine. If I don't get it, I'll call you and get it for me. You guys have a safe trip. Are you guys flying out today? No, we're staying. I heard you guys are staying at the same place I am. We'll have to have a drink. Yeah. Yeah, it's somewhere there. I'm just wondering. Are these things put in a way to make it more memorable? Which one? Because it has to end up in the CD copies. Yeah, that's what I'm getting at. But it might be faster. I have copies of it, but it's something I need to get. Sure. Okay. I'll just put it where you want. Okay. Oh, there's a camera. Yeah. Yeah. I know. You can turn it. That way? Yeah, that way. There's a belter. It's really sort of to get in front of you. Okay. At this time, we're going to go over there.  Oh, I see you. Let's get one. How should we get it? Let's get one. Okay. Okay. Thank you. Thank you. Okay.
judges: Farris, Noonan, Rawlinson